# IN THE DISTRICT COURT OF THE UNITED STATES
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
## ASHEVILLE DIVISION

### CIVIL CASE NO. 1:09cv443

| | | |
|---|---|---|
| STEELCASE, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **ORDER** |
| | ) | |
| M.B. HAYNES CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

**THIS MATTER** is before the Court on the Plaintiff's Motion for Partial

Summary Judgment Dismissing Defendant's First Affirmative Defense [Doc.

37] and the Plaintiff's Motion for Summary Judgment [Doc. 44].[1]

## PROCEDURAL & FACTUAL BACKGROUND

The Plaintiff initiated this action for indemnification and, alternatively,

contribution, on December 10, 2009 based on diversity jurisdiction. [Doc. 1].

---

[1]Although the Pre-Trial Order and Case Management Plan [Doc. 23] does not explicitly limit each party to one motion for summary judgment which is to be filed on or before the motion deadline, it is the custom in this Court for counsel to file only one such motion which contains all grounds for relief. Filing two separate motions, as was done here, defeats the purpose of the briefing page limit which is imposed pursuant to the Case Management Plan. Counsel are requested to adhere more closely to the spirit and meaning of the Case Management Plan in the future.

The procedural background that has led to this claim is undisputed.

In 2003, the Plaintiff Steelcase, Inc. (Steelcase) operated a furniture manufacturing plant in Fletcher, North Carolina. [Id., at 1]. Steelcase entered into a contract with the Defendant M.B. Haynes Corporation (Haynes) for remodeling and construction work in a section of the plant. [Id., at 2]. On October 28, 2003, two of Haynes' employees moved a metal fire door during the course of the remodeling work. The next day, the door fell on Maxine Shelton, an employee of the janitorial service retained by Steelcase. [Id.]. Shelton and her husband (the Sheltons) sued both Steelcase and Haynes in state court. [Id.].

In the Shelton's suit, the state court granted summary judgment in favor of Haynes and dismissed it from the case. [Id.]. The jury returned a verdict in favor of the Sheltons and against Steelcase in the amount of $1,250,000.00. [Id.]. The North Carolina Court of Appeals affirmed the verdict and judgment against Steelcase but reversed the grant of summary judgment in favor of Haynes.[2] [Id., at 3]; Shelton v. Steelcase, Inc., 197 N.C.App. 404, 677 S.E.2d 485 (2009), review denied 363 N.C. 583, 682 S.E.2d 389 (2009). The case against Haynes was remanded for trial. Id. Both Steelcase and Haynes

---

[2]The Court of Appeals held that the Haynes employees owed a duty of care to Maxine Shelton and that an issue of fact existed as to whether the positioning of the fire door by the Haynes employees was a proximate cause of its falling on Ms.Shelton. Shelton, 197 N.C. App. at 430-32.

petitioned for discretionary review by the Supreme Court of North Carolina and both petitions were denied in August 2009. [Doc. 1, at 3.]; Shelton v. Steelcase, Inc., 363 N.C. 583, 682 S.E.2d 389 (2009). Steelcase paid the full amount of the judgment owed to the Sheltons and filed a Satisfaction of Judgment in state court on October 1, 2009. [Doc. 1, at 3; Doc. 17-1].

On January 25, 2010, after this federal lawsuit had been initiated, the Sheltons settled with Haynes, pursuant to which Haynes paid Ms. Shelton $55,000.00 and paid Mr. Shelton $15,000.00 and the Sheltons released and discharged Haynes. [Doc. 11-2]. In April 2010, the Sheltons filed a Notice of Voluntary Dismissal with Prejudice as to both Steelcase and Haynes. [Doc. 17-2].

In the Complaint filed in this Court in December 2009, Steelcase seeks indemnity from Haynes as the primary, active tortfeasor for the full amount of the judgment Steelcase paid to the Sheltons. [Doc. 1, at 3]. In the alternative, Steelcase seeks contribution from Haynes as a joint tortfeasor. [Id., at 4]. Haynes answered and asserted affirmative defenses. As related to the pending motions, Haynes asserted a First Affirmative Defense claiming that the January 2010 Release of All Claims signed by the Sheltons bars any claim for contribution by Steelcase against Haynes. [Doc. 28, at 2]. In its Fifth Affirmative Defense, Haynes claims this action is time barred by N.C. Gen.

Stat. §1-50, the six year statute of repose in connection with damages for negligent construction or repair of or improvement to real property. [Id., at 3].

Steelcase has moved for partial summary judgment to dismiss the First Affirmative Defense, claiming that as a matter of law it does not apply. [Doc. 37]. It thereafter moved for summary judgment arguing that it is entitled to judgment against Haynes because the First and Fifth Defenses fail as a matter of law on the undisputed facts. [Doc. 44].

## STANDARD OF REVIEW

> Under the Federal Rules of Civil Procedure, summary judgment shall be awarded "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, ... show there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." ... As the Supreme Court has observed, "this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact."

Bouchat v. Baltimore Ravens Football Club, Inc., 346 F.3d 514, 519 (4th Cir. 2003), cert. denied 541 U.S. 1042, 124 S.Ct. 2171, 158 L.Ed.2d 732 (2004) (emphasis in original).

_____Nonetheless, in considering the facts for the purposes of a summary judgment motion, the Court will view the pleadings and material presented in the light most favorable to the nonmoving party. Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538

4

(1986).

Because Haynes would ultimately bear the burden of proving its affirmative defenses at trial, it must make a showing sufficient to establish each essential element of those defenses in order to defeat the motion for summary judgment. Peterson v. Tyson Foods, Inc., 983 F.2d 1057 (4th Cir. 1993), citing Celotex Corp v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

## DISCUSSION

**The motion for summary judgment as to the statute of repose.**

The Court first considers the motion for summary judgment pursuant to which Steelcase seeks to dismiss Haynes' Fifth Affirmative Defense, a defense which would preclude the entire action. The motion is based on N.C. Gen. St. §1-50(a)(5) which provides in pertinent part:

a.  No action to recover damages based upon or arising out of the defective or unsafe condition of an improvement to real property shall be brought more than six years from the later of the specific last act or omission of the defendant giving rise to the cause of action or substantial completion of the improvement.[3]

b.  For purposes of this subdivision, an action based upon or arising out of the defective or unsafe condition of an improvement to real property includes:

---

[3]The parties have not raised the issue of substantial completion.

5

      ...

    2.     Actions to recover damages for the negligent construction or repair of an improvement to real property;

      ...

    6.     Actions for contribution indemnification [sic] for damages sustained on account of an action described in this subdivision[.][4]

N.C. Gen. Stat. §1-50(a)(5).

Whether the statute of repose has run is a question of law. Mitchell v. Mitchell's Formal Wear, Inc., 168 N.C. App. 212, 215, 606 S.E.2d 704 (2005). "Summary judgment is proper if the pleadings or proof show without contradiction that the statute of repose has expired." Bryant v. Don Galloway Homes, Inc., 147 N.C. App. 655, 657, 556 S.E.2d 597 (2001).

> In October 2003, Steelcase decided to consolidate some of its space in the 990,000 square-foot Fletcher facility and lease the unused space to generate revenue. Steelcase opted to lease out the maintenance area of the facility and hired M.B. Haynes Corporation to remove some duct work in that area and install a new dock door.
>
>       ...
>
> On [the day of the accident], Steelcase employees were in the area moving materials. M.B. Haynes also had employees working in the maintenance area, cleaning walls, cutting a hole in the wall with heavy machinery, removing ducting near the pipes and

---

[4]The statute of repose governing actions to recover damages for injury arising out of defective repair to real property also governs actions for contribution or indemnification arising out of such repair. New Bern Associates v. Celotex Corp., 87 N.C. App. 65, 359 S.E.2d 481 (1987), review denied 321 N.C. 297, 362 W.E.2d 782 (1987).

conduits on the wall, and excavating just outside the area for a new dock.

...

[T]he fire door had been removed from a wall in another section of the facility and moved to the maintenance area for storage. The door had been in storage for two or three years prior to the accident. ... The fire door was propped up against an uneven wall. Coming down from the ceiling, the wall recessed five to six inches and continued to the floor; piping or conduit also ran down the wall to the floor. The fire door was leaning against the conduits along this span, so that the conduits held the door off the wall several inches.

...

It is undisputed that during the time frame in which Ms. Shelton's accident occurred, M.B. Haynes employees Mr. Allen and Mr. Burrell were in the maintenance area of Steelcases' Fletcher facility cleaning and performing other work pursuant to a contract between M.B. Haynes and Steelcase. Both Mr. Allen and Mr. Burrell stated in their depositions that when they moved the fire door they were aware that other people were working in that area. Although they did not see the door move, they believed they had inadvertently moved it while dragging an air hose along the ground during their cleaning. When they saw skid marks on the floor, they moved the bottom of the door back toward the wall because they were worried that it might "scoot out" from the bottom and hit someone's feet. Despite believing that it would have been safer to lay the door flat on the floor, they did not do so. When viewed in the light most favorable to plaintiffs, Mr. Allen's and Mr. Burrell's testimony indicates that the two workers were concerned that they had accidently moved the door while performing their work[.]

Shelton, 197 N.C. App. at 407-08, 430. As previously noted, the door fell on

Maxine Shelton the next day. Id.

The parties do not dispute that the building itself was an improvement

7

to real property. Steelcase also concedes that Haynes was making "some improvements to real property at the Steelcase Plant[.]" [Doc. 45, at 17]. The issue is whether the fire door itself constituted "an improvement to real property" within the meaning of §1-50(a)(5).

"[T]he plain language of the statute indicates that the statute does not apply unless the action 'aris[es] out of the defective or unsafe condition of an improvement to real property.'" Dawson v. N.C. Dept. of Environment and Natural Resources, 694 S.E.2d 427, 431 (2010). "In sum, a prerequisite for application of [the statute of repose] is that there must have been an improvement to real property and that improvement must be either defective or unsafe." Id. Whether something is an improvement to real property hinges on whether the item in question has been incorporated into the real property; that is, a fixture, as a part of the work undertaken in improving the building or renovating the real property. In the context of the statute of repose, the North Carolina Supreme Court has stated:

> In deciding whether [a] chair lift was real or personal property, the court [in Little v. National Service Industries, Inc., 79 N.C.App. 688, 340 S.E.2d 510 (1986)] looked to the law of fixtures and quoted the definition of fixture found in 1 Thompson on Real Property, "'[a] fixture has been defined as that which, though originally a moveable chattel, is, by reason of its annexation to land, or association in the use of land, regarded as part of the land, partaking of its character....'" The Court of Appeals then looked at the tests which are useful in resolving the issue of when a chattel attached to the real property becomes real property or

8

remains personal property. The factors to be examined include: "(1) the manner in which the article is attached to the realty; (2) the nature of the article and the purpose for which the article is attached to the realty; and (3) the intention with which the annexation of the article to the realty is made."

Wilson v. McLeod Oil Co., Inc., 327 N.C. 491, 515, 398 S.E.2d 586 (1990), quoting Little v. National Service Industries, Inc., 79 N.C.App. 688, 692, 340 S.E.2d 510 (1986).

Here, the fire door was not attached to or installed within the building; it had been removed and was merely being stored. The fire door therefore was not a fixture within the building itself. Nor was installation of the door any portion of the work being done by the Haynes' employees. The location of the fire door in the area where they were working was merely incidental to and not part of the renovation of the building. Therefore, taking the forecast of evidence in the light most favorable to the non-moving party, the Court must conclude that the fire door was not an improvement to real property or a part of an improvement to real property. As such, any negligence on the part of Haynes' employees that may have occurred did not give rise to "a defective or unsafe condition in an improvement to real property" that caused Ms. Shelton's injury. For that reason the statute of repose does not apply to the claim asserted in this case. See, e.g., Feibus & Co. v. Godley Constr. Co., 301 N.C. 294, 302, 271 S.E.2d 385 (1980), rehearing denied 301 N.C. 727,

274 S.E.2d 228 (1981) ("the damages must arise out of the defective and unsafe condition of an improvement to real property and [ ] the party sued must have been involved in the ... construction of the defective or unsafe improvement."); See also; Whittaker v. Todd, 176 N.C. App. 185, 186, 625 S.E.2d 860 (2006), review denied 360 N.C. 545, 635 S.E.2d 62 (2006); Mitchell, 168 N.C. App. at 215; Gillespie v. Coffey, 86 N.C. App. 97, 356 S.E.2d 376 (1987). The Court therefore will grant summary judgment to Steelcase dismissing this affirmative defense.

Steelcase also moved for summary judgment on the issue of negligence, seeking rulings as follows: (1) Haynes was negligent because its employees moved the fire door; (2) Haynes' negligence was active and primary thus entitling Steelcase to indemnification; or (3) in the alternative, Haynes' negligence was joint and concurrent thus entitling Steelcase to contribution. The North Carolina Court of Appeals has ruled that the forecast of evidence, while not *establishing* Haynes' negligence or the lack thereof, has shown an *issue of fact* for jury determination. Shelton, 197 N.C. App. at 431-32.

> The conflicting testimony regarding the distance of the door from the wall and how close Mr. Allen and Mr. Burrell moved the door to the wall *creates a genuine issue of material fact as to whether M.B. Haynes breached its duty of care*[.] ... The conflicting testimony regarding the distance of the door from the wall also raises a triable issue of fact regarding proximate causation

improper for determination on summary judgment.

Id. (emphasis added). The forecast of evidence that manifested the genuine issue of fact in the state court case presents precisely the same genuine issue of material fact in this case: whether Haynes was negligent in causing the injury to Shelton.

In light of the presence of this issue of fact, the Court will deny Steelcase's motion for summary judgment on the issue of negligence.

**The motion for summary judgment as to the First Affirmative Defense**

Steelcase also seeks partial summary judgment dismissing Haynes' First Affirmative Defense. By that defense, Haynes asserts that Steelcase is barred from recovering contribution, relying on the Uniform Contribution among Tort-Feasors Act, which has been adopted in North Carolina as N.C. Gen. Stat. §§1B-1, *et. seq*.

Haynes' defense is particularly based on §1B-4(2) of that Act, which reads in pertinent part as follows. "When a release ... is given in good faith to one of two or more persons liable in tort for the same injury ... [i]t *discharges the tort-feasor to whom it is given from all liability for contribution to any other tort-feasor*." N.C. Gen. Stat. §1B-4(2) (emphasis added). Haynes claims that the Release of All Claims executed by the Sheltons to Haynes therefore precludes Steelcase from pursuing this action for

contribution against Haynes.

The procedural sequence was as follows: (1) on June 16, 2009, the North Carolina Court of Appeals affirmed the judgment and the amount thereof against Steelcase and in favor of the Sheltons but reversed the grant of summary judgment in favor of Haynes; (2) in August 2009, the Supreme Court of North Carolina refused to review that decision, making the judgment final; (3) on October 1, 2009, Steelcase paid to the Sheltons the amount of the judgment and filed a Satisfaction of Judgment; (4) in December 2009, Steelcase brought this action against Haynes for indemnification and, in the alternative, for contribution; (5) in January 2010, the Sheltons signed a Release of All Claims against Haynes that gives rise to this defense; and (6) in April 2010, the Sheltons filed a stipulation of dismissal with prejudice of the state court action as to both Steelcase and Haynes.

Steelcase argues that §1B-4(2) is inapplicable because Haynes was no longer liable to the Sheltons at the time of the execution of the Release. For this, Steelcase relies on N.C. Gen. Stat. §1B-3(e), which reads in pertinent part "[t]he satisfaction of the judgment discharges the other tort-feasors from liability to the claimant for the same injury or wrongful death, but does not impair any right of contribution." Id. The rendition of the judgment against Steelcase in favor of the Sheltons in 2008 did not serve to discharge Haynes;

neither did the judgment becoming final upon the denial of discretionary review by the Supreme Court in August 2009.[5] Upon the *satisfaction* of the judgment on October 1, 2009, however, §1B-3(e) served to discharge Haynes from any further liability to the Sheltons because a claimant cannot recover twice for the same injury. <u>Akins v. Mission St. Joseph's Health System, Inc.</u>, 193 N.C.App. 214, 667 S.E.2d 255, <u>review</u> <u>dismissed</u> 672 S.E.2d 681, <u>review</u> <u>denied</u> 672 S.E.2d 682 (2008). The satisfaction of the judgment, although discharging Haynes' liability to the Sheltons, did not impair Steelcase's right to seek contribution from Haynes. N.C. Gen. Stat. §1B-3(e).

For that reason, when Haynes obtained the Release from the Sheltons three months after the satisfaction of the judgment, Haynes no longer came within the purview of §1B-4(2). At that time the Release was no longer "given in good faith to one of two or more persons *liable* in tort for the same injury [to the Sheltons]." Id. (emphasis added). Rather, the Release was given to a party that *had formerly been liable* to the Sheltons. Therefore, §1B-4(2) does not serve to bar contribution against Haynes, See, <u>e.g.</u>, <u>Sterling v. Gil Soucy Trucking, Ltd.</u>, 146 N.C.App. 173, 182, 552 S.E.2d 674 (2001); and §1B-3(e) explicitly states that Steelcase's right of contribution against Haynes is not

---

[5] Another portion of §1B-3(e) reads "[t]he recovery of judgment against one tort-feasor for the injury ... does not of itself discharge the other tort-feasor[ ] from liability to the claimant." N.C. Gen. Stat. §1B-3(e).

impaired.

When the Sheltons' claim against Haynes was remanded by the North Carolina Court of Appeals, Haynes could have entered into a settlement with the Sheltons *prior* to the satisfaction of the judgment by Steelcase and thereby could have obtained a release which would have served to insulate it from any contribution claim - and would have allowed Steelcase a credit against the judgment for any consideration paid in good faith by Haynes for the release. Haynes, however, chose not to do so. By waiting until after the satisfaction of the judgment, its payment could no longer be credited against the judgment or to the benefit of Steelcase. Indeed §1B-3(e) is designed to prevent precisely the maneuver undertaken by Haynes. See, e.g., Brooks v. Wal-Mart Stores, Inc., 139 N.C. App. 637, 535 S.E.2d 55 (2000), review dismissed 547 S.E.2d 1 (2001), review denied, 353 N.C. 370, 547 S.E.2d 2 (2001)

"[W]hen language used in a statute is clear and unambiguous, [the] Court must refrain from judicial construction and accord words undefined in the statute their plain and definite meaning." Akins, 193 N.C.App. at 218. The language of both §1B-3(e) and §1B-4(2) is clear and unambiguous. The Sheltons were entitled to one recovery of the sum awarded by the jury. Until that amount was paid, the liability for the injury had not been discharged. Steelcase, as the party adjudicated to be liable, may never have paid the

judgment or may have been unable to pay it. Thus, the Sheltons would have continued to have an incentive to negotiate with Haynes as a potentially liable party. Once the Sheltons had been paid the entire amount of the judgment, however, they had no incentive to negotiate because they had received their one recovery. The plain language of the statute shows that the satisfaction of the judgment by Steelcase discharged Haynes of liability to the Sheltons, and therefore the release given thereafter was of no effect; a nullity.

For these reasons Steelcase's motion for partial summary judgment will be granted and the First Affirmative Defense dismissed.

### ORDER

**IT IS, THEREFORE, ORDERED** that the Plaintiff's Motion for Partial Summary Judgment Dismissing Defendant's First Affirmative Defense [Doc. 37] is hereby **GRANTED**.

**IT IS FURTHER ORDERED** that the Plaintiff's Motion for Summary Judgment [Doc. 44] is hereby **GRANTED IN PART** in that the Defendant's Fifth Affirmative Defense is Dismissed. Except as heretofore granted said Motion is **DENIED**.

Signed: August 5, 2011

Martin Reidinger
United States District Judge

15